**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONAL EMERGENCY MEDICAL SERVICES ASSOCIATION,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN MEDICAL RESPONSE WEST,<br><br>    Defendant. | 1:11-cv-00077-AWI-GSA<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT<br><br>(Docs. 13-16 and 17-17-6) |

**I. INTRODUCTION**

Plaintiff National Emergency Medical Services Association and defendant American Medical Response West have filed competing motions for summary judgment. For reasons discussed below, Plaintiff's motion shall be granted; Defendant's motion shall be denied.

**II. FACTS AND PROCEDURAL BACKGROUND**

On January 14, 2011, plaintiff National Emergency Medical Services Association ("Plaintiff" or

"NEMSA") filed its complaint under section 301 of the Labor Management Relations Act (LMRA) as amended, 29 U.S.C. § 185, to compel arbitration against defendant American Medical Response West ("Defendant" or "AMR"). In the complaint, Plaintiff alleged as follows:

> "7. Defendant provides emergency and non-emergency ambulance and medical transportation services throughout Northern California including Stanislaus County. Defendant provides these services pursuant to contracts with various public and private entities. [¶] 8. NEMSA is, and at all times material hereto was, the certified exclusive representative for a bargaining unit of approximately 2800 employees working for AMR in Northern California and Stanislaus County. The bargaining unit is referred to as the 'Northern California bargaining unit' and consists of the following employees . . . . [¶] 9. At all times material hereto, AMR has operated two facilities in Stanislaus County, California. Defendant has operated a facility located at 4846 Stratos Way, Modesto, California 95356 (the 'Modesto facility'). Employees in the classifications identified in paragraph 8, *supra*, and who are assigned to, work in and/or deploy from the Modesto facility are part of the Northern California bargaining unit represented by NEMSA. Defendant has also operated a second Stanislaus County facility in Turlock, California ('the Turlock facility'). Employees assigned to AMR's Turlock facility are excluded from the Northern California Bargaining unit and are not represented by NEMSA."

Plaintiff further alleged:

> "10. AMR and NEMSA are parties to a written collective bargaining agreement covering the Northern California bargaining unit ('the CBA'). The CBA commenced on July 1, 2008 and will expire on June 30, 2011. Section 1.1 of the CBA specifically identifies NEMSA as the exclusive bargaining representative for the Northern California bargaining unit, and describes the bargaining unit and work jurisdiction of the bargaining unit represented by NEMSA . . . . The Northern California bargaining unit specifically includes EMTs and Paramedic employees working in Stanislaus County, except for EMTs and Paramedics working in Turlock. [¶] 11. Approximately 40 employees are assigned to the Turlock facility and are represented by the Turlock Emergency Medical Services Association ("TEMSA"). At all times relevant hereto, AMR has recognized TEMSA as the exclusive bargaining representative for employees in the Turlock facility as follows: [¶] ['][A]ll employees in the following NLRB certified bargaining unit: - All full-time and regular part-time paramedics and emergency medical technicians employed by the Employer at its Turlock, California facility; Excluding: All other employees, office clerical employees, guards, and supervisors as defined in the Act.[']"

Plaintiff further alleged:

> "14. In approximately January 2010, AMR advised NEMSA that it would close its Turlock facility and relocate all Turlock facility employees to AMR's Modesto facility. AMR stated that it would then deploy all Stanislaus County ambulances from the Modesto facility, would combine its posting plan for Stanislaus County and would otherwise treat all of Stanislaus County as one geographic area to be served by the newly expanded Modesto facility. AMR referred to these changes as a 'redeployment.' AMR proposed to implement this 'redeployment' at the beginning of May 2010. [¶] 15. AMR met with NEMSA to discuss the details of the proposed

'redeployment' on or about February 8, 2010. During that meeting, AMR provided documents explaining, in part, its reasons for proposing the 'redeployment' and outlining how and when the 'redeployment' would occur. AMR's documents specifically stated that the Turlock facility would be closed as part of the 'redeployment' and stated that all Turlock facility employees would relocate to AMR's Modesto facility. [¶] 16. NEMSA concluded that the closure of the Turlock facility and the relocation of Turlock facility employees to the Modesto facility would effectively eliminate the Turlock bargaining unit and TEMSA's continued representation of Turlock facility employees. TEMSA was only certified to represent AMR employees in Stanislaus County who work at the Turlock facility, and once that facility closed and the Turlock employees began working from the Modesto facility, the former Turlock facility employees would become part of the Northern California bargaining unit and be represented by NEMSA."

Plaintiff further alleged:

"17. . . . AMR announced in late June, 2010 that the 'redeployment' it presented at the February 8, 2010 meeting would occur on July 25, 2010. [¶] 18. On July 25, 2010, without advance notice to NEMSA, AMR implemented a new redeployment plan that was substantially and fundamentally different from the 'redeployment' plan presented at the February 8, 2010 meeting. AMR did not close the Turlock facility or reassign or relocate Turlock employees to the Modesto facility as previously represented by AMR. Instead, AMR merely combined the posting plan for all ambulances in Stanislaus County and began assigning calls for service originating in the area served exclusively by Modesto facility employees to Turlock facility employees, and vice versa. [¶] 19. In a letter to NEMSA dated August 4, 2010, AMR informed NEMSA that it now had no intention of closing the Turlock facility and instead would use a unified posting plan with both facilities remaining open and handling calls for service through Stanislaus County."

Plaintiff further alleged:

"20. Under the 'redeployment' plan actually implemented, AMR has consistently and repeatedly assigned NEMSA bargaining unit work (i.e., calls for service originating in the geographic area served by the Modesto facility), to nonbargaining unit employees. Specifically, AMR has assigned calls for service originating within the geographic area served by the Modesto facility and within the bargaining unit represented by NEMSA to employees from the Turlock facility who are represented by TEMSA. AMR's 'redeployment' plan improperly eliminated the established distinction between bargaining unit work performed by NEMSA-represented employees and bargaining unit work performed by TEMSA-represented employees. AMR's 'redeployment' plan also improperly eliminated NEMSA's jurisdiction as the exclusive bargaining representative for AMR employed EMTs and Paramedics performing work in Stanislaus County, except for work performed in Turlock."

Plaintiff further alleged:

"22. On or about July 31, 2010, NEMSA filed a grievance alleging that AMR's 'redeployment,' as implemented, violated the bargaining unit description set forth in Section 1.1 of the CBA and violated the prohibition against subcontracting set forth in Section 23.7 of the CBA. AMR's assignment of work to non-bargaining unit EMTs and Paramedics in areas of Stanislaus County other than Turlock violates

3

    Section 1.1 of the CBA which specifies in part that all EMTs and Paramedics in Stanislaus County are represented by NEMSA except for those in Turlock. AMR's assignment of Northern California bargaining unit work to non-bargaining unit EMTs and Paramedics, whose working conditions are governed by a different collective bargaining agreement, violates Section 23.7 of the CBA forbidding the subcontracting of bargaining unit work. [¶] 23. On or about August 5, 2010, NEMSA requested that AMR permit an amendment to the July 31, 2010 grievance to include an allegation that AMR's 'redeployment,' as implemented, also constituted an improper transfer of bargaining unit work to non-bargaining unit employees. AMR refused to allow any amendment to the grievance, even though the time limit for filing the initial grievance had not passed. Because AMR refused to allow the initial grievance to be amended, NEMSA filed a second grievance on August 5, 2010 alleging that AMR's 'redeployment' improperly transferred bargaining unit work to nonbargaining unit employees. [¶] 24. NEMSA properly processed the July 31, 2010 and the August 5, 2010 grievances through Step One and Step Two of the grievance procedure set forth in Section 6.1 of the CBA. Both grievances were heard at Step One and Step Two and rejected by AMR."

Plaintiff further alleged:

    "25. Section 6.1 of the CBA specifies that NEMSA may submit an unresolved grievance to final and binding arbitration[.] [¶] . . . [¶] 26. On or about October 21, 2010, NEMSA properly filed two separate requests for arbitration with the American Arbitration Association ('AAA'), one for each grievance . . . . [¶] 27. NEMSA filed an unfair labor practice charge with the NLRB based on the same matters at issue in NEMSA's two grievances. On October 29, 2010, the NLRB deferred further proceedings on the unfair labor practice charge to the parties[ ] grievance and arbitration procedure based on the NLRB's policy that the parties' should resolve certain issues through their contractual grievance procedure. [¶] 28. On or about November 2, 2010, AMR's labor counsel informed NEMSA that AMR refused to arbitrate the two grievances. AMR contended that the 'redeployment' was excluded from the grievance and arbitration provisions of the CBA."

On November 4, 2011, Defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, contending the grievances at issue are specifically exempted from the grievance and arbitration provisions of the parties' collective bargaining agreement. In the alternative, Defendant requested the Court decline to exercise jurisdiction and dismiss the complaint as being within the primary jurisdiction of the National Labor Relations Board. On November 4, 2011, Plaintiff filed a competing motion for summary judgment, contending its grievances are arbitrable as a matter of law and that the exceptions cited by Defendant are inapplicable.

    On November 21, 2011, each party filed an opposition to the other's motion for summary judgment. On December 5, 2011, the parties filed their respective replies to the oppositions.

4

## III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538. A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the motion is unopposed, the movant is not absolved of the burden to show there are no genuine issues of material fact (*Henry v. Gill Industries, Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993)), although the court may assume the movant's assertions of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and other supporting materials show the movant is entitled to it. See Fed. R. Civ. P. 56(e)(2), (3).

## IV. DISCUSSION

***A. Jurisdiction*** – Pursuant to section 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The parties do not dispute Defendant is an employer and Plaintiff is a labor organization under the LMRA, and the gravamen of Plaintiff's action to compel arbitration is Defendant breached the terms of the parties' collective bargaining agreement by improperly subcontracting out and/or transferring work to non-bargaining unit employees in violation of sections 1.1 and 23.7 of the agreement and refusing to arbitrate the grievances filed by Plaintiff on those issues in accordance with the agreement's grievance and arbitration procedure. Accordingly, the Court has jurisdiction over this action as a suit for violation of a contract between an employer and a labor organization. *See International Broth. of Elec. Workers, AFL-CIO v. Hechler,* 481 U.S. 851, 857, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) ("The ordinary § 301 case is a contract claim in which a party to the collective-bargaining agreement expressly asserts that a provision of the agreement has been violated"); *see also International Ass'n of Machinists and Aerospace Workers,* 865 F.2d 902, 905 (7th Cir. 1989) ("A 'grievance' is merely a claim of breach of the collective bargaining agreement").

***B. Summary of grievances*** – The motions for summary judgment essentially ask the Court to determine whether Plaintiff's grievances are arbitrable under the collective bargaining agreement. The two grievances at issue in this case are Grievance #6684 and Grievance #6688.

    ***1. Grievance #6684*** – The notification form for Grievance #6684 states: "Date of Event(s) Causing Grievance: on or around 2010-07-25 [¶] Description of Grievance [¶] AMR on 7/25/10 started to subcontract with TEMSA. This is a violation of the CBA with NEMSA. NEMSA is the exclusive bargaining unit for all full-time and part-time employees in Northern California. Section 1.1 of the CBA excludes Turlock who are currently TEMSA." The form further states: "Applicable Contract provisions include, but are not limited to, section(s) [¶] 1.1 - Scope of Agreement (NLRB

Certification) 23.7 - Subcontracting [¶] NEMSA Requested Resolution [¶] To cease the subcontracting, and recognize NEMSA as the exclusive bargaining agent for these employees and cover them under the NORCAL Master CBA (1.1) and make whole."

*2. Grievance #6688* – The notification form for Grievance #6688 states: "Date of Event(s) Causing Grievance: on or around 2010-07-25 [¶] Description of Grievance [¶] On 7/25/10, AMR implemented a new deployment plan that integrates its operations in Stanislaus County. Turlock employees are now posting and running calls in Modesto and otherwise performing work traditionally performed by NEMSA bargaining unit members. AMR's use of Turlock employees to perform bargaining unit work constitutes an improper transfer of bargaining unit work to non-bargaining unit employees and/or constitutes subcontracting, which is barred by the CBA. [¶] Applicable Contract provisions include, but are not limited to, section(s) [¶] 1.1 23.7 [¶] NEMSA Requested Resolution [¶] Cease assignment of NEMSA bargaining unit work to non-bargaining unit employees immediately and/or cease all transfers and subcontracting of bargaining unit work."

*C. Arbitrability of grievances* – The Court now turns to the central issue: the arbitrability of Plaintiff's grievances. In determining arbitrability, the Court is guided by the principles first established by the Supreme Court in 1960 in a series of cases referred to as the Steelworkers Trilogy. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of American v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Steelworkers Trilogy laid out four basic principles governing the application of arbitration provisions in collective bargaining agreements that were later summarized and reaffirmed by the court in *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986): "The first principle gleaned from the *Trilogy* is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit' . . . . [¶] The

second rule, which follows inexorably from the first, is that the question of arbitrability – whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination. [¶] . . . [¶] The third principle derived from our prior cases is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. [¶] Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id*. at 648-51 (internal citations omitted). The presumption in favor of arbitrability is "particularly applicable where the clause is . . . broad." *Id*. at 650. In such cases, the presumption may be overcome only by the showing of an "express provision excluding a particular grievance from arbitration" or "forceful evidence of a purpose to exclude the claim from arbitration." *Id*. (citing *Warrior & Gulf Nav. Co., supra,* 363 U.S. at 584-85) (internal quotations omitted).

      Article 6, § 6.1 of the collective bargaining agreement, which sets out the grievance and arbitration procedure, provides in pertinent part: "In the event that any grievance arises concerning the interpretation or application of any of the terms of this Agreement . . . such matters shall be adjusted according to the procedures and conditions set forth below." The subject matter of Plaintiff's grievances is Defendant's ability to subcontract out and/or transfer work to non-bargaining unit employees. That ability is circumscribed by article 1, § 1.1 and article 23, § 23.7. Section 23.7 provides in pertinent part: "A. During the term of this Agreement, the Employer will not subcontract work if such subcontracting has the purpose or effect of displacing union employees or eroding the bargaining unit. [¶] . . . [¶] D. . . . [S]hould the Union claim that the Employer is subcontracting or transferring excessive union work and failing to staff appropriately, the Employer agrees to meet with the Union to discuss the issue. The issues for such meeting shall be the following questions: (1) whether an increase to unit hours would be a more appropriate response to the excess call volume

being subcontracted or transferred and (2) if so, is it possible to staff units to handle the additional call volume.  If the parties cannot agree on answers to these questions, the provisions of the grievance procedure contained in article 6 of this Agreement shall apply." Read together, sections 6.1 and 23.7 expressly provide that disputes over alleged breaches of the collective bargaining agreement, including disputes over subcontracting or transfer of work by the employer, are properly submitted to grievance and arbitration.  Because Grievances #6684 and #6688 allege violations of the agreement arising out of Defendant's subcontracting and transfer of work, the parties' dispute is covered by the arbitration clause.  Therefore, the Court simply cannot say, let alone say with positive assurance, that the clause is not susceptible of an interpretation that covers the asserted dispute.  *AT&T Technologies, Inc., supra,* 475 U.S. at 651.

In addition, the arbitration clause is very broadly worded.  Although the clause provides "[t]he arbitrator's authority shall be limited to resolution of the particular issue(s) submitted to the arbitrator by the Union and the Employer and the authority conferred by this Agreement," it contains no restrictions limiting the issues that may be submitted to the arbitrator.  Furthermore, it gives the arbitrator power to regulate discovery, including the authority to "issue or direct the issuance of subpoenas for the attendance and testimony of witnesses and the production of documents and things" and "resolve any pre-hearing motions presented by either party."  Under the foregoing circumstances, the presumption of arbitrability applies with particular force and Defendant, as the party opposing arbitration, must point to an express provision excluding the grievances at issue from arbitration or provide forceful evidence that the parties intended to exclude the grievances from arbitration.  *AT&T Technologies, Inc., supra,* 475 U.S. at 650.

Defendant provides no evidence of intent.  Instead, Defendant contends Plaintiff's grievances stem from amendments to Defendant's deployment and staffing plans, and are thus excluded from the grievance and arbitration procedure by article 10, § 10.5 of the collective bargaining agreement, which provides in pertinent part: "Should it become necessary for the Employer to make changes to existing deployment and staffing plans, the Employer will notify the Union prior to making such

9

changes. The Employer shall meet with the Union when requested to do so to discuss the changes and negotiate the impacts of the changes. However, the decision to make such changes shall not be grievable with the exception of issues of seniority and/or shift bidding." From this, Defendant contends it is not contractually obligated to submit Plaintiff's grievances to arbitration. Problematically for Defendant, section 10.5 hardly constitutes an "express provision excluding" Plaintiff's grievances from arbitration. *AT&T Technologies, Inc., supra,* 475 U.S. at 650.

      As noted above, Grievance #6684 alleged that Defendant violated the collective bargaining agreement by subcontracting bargaining unit work out to TEMSA. Grievance #6688 alleged that Defendant violated the agreement by improperly transferring bargaining unit work to Turlock (i.e., non-NEMSA) employees. Even though the evidence suggests the grievance might have arisen in the context of changes Defendant made to its deployment and staffing plans, Defendant's decision to make such changes is only tangential to the crux of the dispute, which is whether Defendant violated the terms of the collective bargaining agreement by subcontracting out and/or transferring bargaining unit work to non-bargaining unit employees. Section 10.5 does not expressly state that disputes involving the subcontracting and transfer of work by an employer are not grievable. Defendant's interpretation of section 10.5 depends upon the implicit assumption that an employer's "decision to make . . . changes" to "deployment and staffing plans" necessarily encompasses disputes over subcontracting and transfers of work when such disputes occur in the context of deployment. In the Court's view, such an assumption is unwarranted, particularly where, as noted above, section 23.7 expressly provides that disagreements between Plaintiff and Defendant over subcontracting or excessive transferring of union work *are* grievable if the parties cannot meet and resolve the issues. To accept Defendant's characterization of Plaintiff's grievances would essentially eliminate any opportunity for a meaningful challenge to Defendant's alleged misconduct, thwarting the purpose of section 23.7 and the grievance procedure. Moreover, if the Court were to interpret section 10.5 as Defendant suggests, it would be forced to ignore other provisions of the agreement. Under the general principles of contract intepretation, it is well established that "any contract must be construed

10

as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 68 Cal.App.4th 447, 474, 80 Cal.Rptr.2d 329 (1998).  Section 23.7 deals exclusively with subcontracting.  Article 10, which includes section 10.5, deals exclusively with hours of work.  If subcontracting were to be subsumed within hours of work, as Defendant would have the Court do, there would be no reason for section 23.7 to exist independently.[1]

Because Plaintiff's grievances do *not* constitute disputes about Defendant's decision to change deployment and staffing plans but rather allegations that Defendant improperly subcontracted out and/or transferred bargaining unit work to non-bargaining unit employees in violation of the collective bargaining agreement, the Court finds the grievances to be arbitrable under the terms of the grievance and arbitration procedure set forth in the agreement.  Section 6.1 of the agreement states that if the parties have pursued the grievance procedure but fail to resolve the dispute, Plaintiff may request that the grievance be referred to arbitration.  Plaintiff contends, and Defendant does not dispute, that it has exhausted the pre-arbitration grievance process.  Accordingly, the Court concludes Plaintiff is entitled to summary judgment compelling Defendant to arbitrate the grievances.  In light of this conclusion, the Court need not consider Defendant's alternative request that the Court decline to exercise jurisdiction and dismiss the complaint as being within the primary jurisdiction of the National Labor Relations Board

## V. DISPOSITION

Based on the foregoing, the motion of plaintiff National Emergency Medical Services Association

---

[1] To the extent the parties disagree over how to give effect to section 10.5, such a disagreement could only be resolved as a matter of contract interpretation.  Again, section 6.1 provides that matters "concerning the interpretation . . . of any of the terms of this Agreement" shall be resolved according to the grievance and arbitration procedure.  In other words, matters of contract interpretation are for the arbitrator.  This conclusion further supports a finding of arbitrability.

for summary judgment is GRANTED.  The motion of defendant American Medical Response West for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:    December 23, 2011                                           
CHIEF UNITED STATES DISTRICT JUDGE

12